U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 2 4 2005

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

TEXAS TECH UNIVERSITY,                )
                                      )
        Plaintiff,                    )
                                      )   Civil Action No. 5-05CV0192-C
v.                                    )
                                      )
JOHN SPIEGELBERG, individually, and   )
d/b/a RED RAIDER OUTFITTER,           )
                                      )
        Defendants.                   )

## COMPLAINT

Plaintiff, Texas Tech University ("Plaintiff" or "Texas Tech") states the following for its

Complaint against Mr. John Spiegelberg, individually, and d/b/a Red Raider Outfitter.

### SUBSTANCE OF THE ACTION

1.      This is an action for trademark infringement and dilution, unfair competition, and

breach of contract, arising under the Federal Trademark Act of 1946, 15 U.S.C. § 1051 et seq.

("Lanham Act"); the Texas Trademark Act, Tex. Bus. & Comm. Code Ann. §§ 16:01 et seq.,

including the Texas Anti-Dilution Statute, Tex. Bus. & Comm. Code Ann. § 16:29, as well as

the trademark and anti-dilution laws of the several states; and the common law.

2.      Defendant Spiegelberg is the sole proprietor of a retail store operating adjacent to

the Texas Tech campus in Lubbock, Texas.  Spiegelberg and his Red Raider Outfitter retail store

also sell merchandise through websites operating under domain names such as

www.redraideroutfitter.com and www.texastechoutfitter.com.  Some of this merchandise is

produced by third parties and officially licensed by the University.  Defendants also, however,

produce or arrange for the production of merchandise that is unlicensed and not otherwise

approved by Texas Tech. Defendants have sold and are selling unlicensed merchandise that incorporates word marks, design marks, color schemes and other source-identifying indicia associated with the University. Spiegelberg is using this source-identifying indicia in combination with other phrases, designs, terminology, and information in a way calculated to create the misimpression that his merchandise is licensed or sponsored by or otherwise affiliated with the University. Plaintiff brings this action to stop Defendants from continuing to pass off their unlicensed merchandise as that of Plaintiff and to prevent Defendants from trading on the enormous goodwill associated with Texas Tech University. Defendants' misconduct is likely to cause confusion and to deceive consumers and the public and will continue to do so absent relief from this Court.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. This Court has jurisdiction over Plaintiff's related state and common law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

4.      This Court has personal jurisdiction over Defendants because Defendants reside in this state, do business in this state, have committed tortious acts in this state, and have otherwise established contacts with this state making the exercise of personal jurisdiction proper.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Defendants reside in this District and a substantial part of the events or omissions giving rise to the action occurred in this District.

## THE PARTIES

6.      Plaintiff Texas Tech University is a general academic teaching institution of the State of Texas, having its principal location at 2500 Broadway, Lubbock, Texas 79409.

7.      On information and belief, Defendant Spiegelberg is an individual of the full age of majority and resides in and is a citizen of the State of Texas.   On information and belief, Spiegelberg is, and at all times relevant to this Complaint was, the sole proprietor of Red Raider Outfitter, a retail store and apparel producer with its principal place of business at 2416 Broadway, Lubbock, Texas 79401, and is subject to service at that address.   Further on information and belief, Spiegelberg directed, controlled, participated in, engaged in, performed, authorized, approved, ratified, actively and knowingly caused, and was the moving, active, conscious force behind the acts of Red Raider Outfitter forming the basis of this Complaint.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### Plaintiff Texas Tech University and Its Trademark Rights

8.      Plaintiff Texas Tech University was founded in 1923, and its academic and athletic programs are well known and respected throughout the region and beyond.   Plaintiff is located in Lubbock, Texas, which was selected by a legislative committee to be the site for the university now known as Texas Tech University.   Plaintiff's academic and athletic programs have long been a centerpiece of Lubbock city life, and, in the appropriate context and circumstances, references to "Lubbock" will be understood by the relevant consuming public as references to Plaintiff.

9.      Plaintiff has extensively used and promoted "Texas Tech University" and "Texas Tech" as its name, as well as a trademark and a service mark.   Plaintiff developed trademark rights in its name long before the activities at issue in this Complaint, and the TEXAS TECH

name and mark, of course, serves as a powerful indicator of the source of goods and services provided by or otherwise affiliated with Plaintiff. Plaintiff is the owner of U.S. Trademark Registration No. 2,511,970 for its TEXAS TECH UNIVERSITY name and mark, which registration issued on November 27, 2001. On-line records from the United States Patent and Trademark Office ("PTO") for this mark are attached as Exhibit 1. Plaintiff is also the owner of a variety of Texas State registrations consisting of or incorporating the TEXAS TECH name and mark, including Texas State Registrations Nos. 59,823, 59,822, 49,935, 49,912, and 49,910.

10.     A very common shorthand for referring to Plaintiff is "Tech." In the appropriate context and circumstances, use of the term "Tech" will be perceived by the relevant consuming public as a reference to Plaintiff. Plaintiff's licensees have often used the moniker "Tech" as a means of referring to Plaintiff. Plaintiff is the owner of trademark rights in the term "Tech," when said term is used in the appropriate context or circumstances, such as merchandise that makes reference to Plaintiff, Plaintiff's accomplishments, or events in which Plaintiff will be participating.

11.     Plaintiff's athletic identity is the "Red Raider." Plaintiff has regularly used the mark and name RED RAIDERS in connection with its athletic programs since at least as early as 1936. Plaintiff, through its licensees, has also used the RED RAIDER mark in connection with a wide variety of apparel and other merchandise. Plaintiff is the owner of Texas State Registration Nos. 49,917 and 49,912 for, respectively, RED RAIDERS and TEXAS TECH UNIVERSITY RED RAIDERS for apparel items. Plaintiff is the owner of valuable trademark rights in its RED RAIDERS mark.

12.     Plaintiff has adopted, used and promoted a design mark known as "Raider Red," which is based in imagery drawn and developed from Plaintiffs' RED RAIDERS athletic

identity.   One depiction of the Raider Red Design Mark is featured in U.S. Trademark Registration No. 2,433,675, which registration issued on March 6, 2001.   The registration certificate for this mark is attached as Exhibit 2.   Plaintiff is the owner of valuable trademark rights in its Raider Red Design Mark, as a result of its use and promotion, as well as the aforementioned registration.   Plaintiff developed trademark rights in its Raider Red Design Mark long before the activities at issue in this Complaint, and the Raider Red Design Mark serves as a powerful indicator of the source of goods and services provided by or otherwise affiliated with Texas Tech.

13.   Plaintiff uses a scarlet and black color scheme in connection with its educational and entertainment services and its licensed apparel and other merchandise, including the uniforms of its athletic teams, souvenirs and memorabilia.   The scarlet and black color scheme is used prominently and repeatedly in connection with Plaintiff's athletic teams and its many other organizations, activities and services, as well as with goods sold by Plaintiff or its licensees. Plaintiff uses the scarlet and black color scheme in connection with its name, the RED RAIDERS mark, the Raider Red Design Mark, as an element of its other logos and design marks, and in numerous additional contexts.   Texas Tech extensively and continuously used and promoted its scarlet and black color scheme before the activities of Defendants outlined in this Complaint. Plaintiff's scarlet and black color scheme serves as a trademark in the appropriate context and circumstances,   such   as   merchandise   that   makes   reference   to   Plaintiff,   Plaintiff's accomplishments, or events in which Plaintiff will be participating.   Plaintiff's TEXAS TECH name and mark, RED RAIDERS word mark, Raider Red Design mark, and Scarlet and Black Color Scheme mark, are hereinafter collectively referred to as "Plaintiff's Marks."

14.     Plaintiff's Marks have been used in interstate commerce and have achieved significant fame and public recognition, especially when appearing in connection with collegiate athletic teams and events and related apparel items.   Because of their widespread use in connection with Plaintiff's activities and licensed merchandise, Plaintiff's Marks have tremendous power as source identifiers.

15.     Plaintiff licenses Plaintiff's Marks through its licensing agent, The Collegiate Licensing Company (CLC), which is the nation's leading collegiate licensing and marketing representative.   CLC assists collegiate licensors in protecting and controlling the use of their logos through trademark licensing.   CLC represents more than 190 universities, bowl games, and conferences, including Texas Tech University.

**Defendants' Unlawful Activities**

16.  In 1997, Defendants entered into a license agreement with Plaintiff via CLC.  A copy of said license agreement is attached as Exhibit 3 (the "License Agreement").   The License Agreement contains a number of provisions protecting Plaintiff's Marks, including the following:

> After expiration or termination of this [License] Agreement for any reason, Licensee [Defendants] shall refrain from further use of any of the Licensed Indicia or any similar mark, including any geographic reference or depiction, directly or indirectly, or any derivation of the Licensed Indicia or a similar mark . . . .

License Agreement, Exh. 3, at ¶ 20(a).  The term "Licensed Indicia" is defined as the "names, symbols, designs, and colors of the Member Universities [Plaintiff], including without limitation, the trademarks, service marks, designs, team names, nicknames, abbreviations, city/state names in the appropriate context, slogans, logographics, mascots, seals and other symbols associated with or referring to the respective Member Universities." License Agreement, Exh. 3, at ¶ 1(b).

The License Agreement likewise prohibits Defendants from applying to register marks that consist of or incorporate the License Agreement. License Agreement, Exh. 3, at ¶ 8(a), (b).

17. The License Agreement was renewed and extended until 2003 and then allowed to expire by Plaintiff as a result of Defendants' repeated failures to comply with its terms. Defendants are no longer licensed by Plaintiff but nevertheless continue to manufacture and sell unlicensed and unauthorized merchandise featuring the Plaintiff's Marks, or colorable imitations thereof, within this judicial district and elsewhere.

18. Defendants have even gone so far as to seek federal trademark registrations for marks that incorporate Plaintiff's Marks or portions thereof, namely the following:

| Defendants' Texas Tech-Related Trademark | Application Serial No. | Filing Date | Exhibit No. |
|---|---|---|---|
| WRECK 'EM TECH | 78/620,435 | April 30, 2005 | 4 |
| RAIDERLAND | 78/620,437 | April 30, 2005 | 5 |

The above-referenced marks are designed to trade upon the identity of Texas Tech and are in direct violation of the License Agreement. On-line records from the USPTO for these applications are attached at the exhibit numbers referenced in the chart above.

19. On April 15, 2005, Defendants initiated a trademark cancellation proceeding before the Trademark Trial and Appeal Board of the USPTO, Cancellation Proceeding No. 92/044,727, by which they seek to cancel the federal registration for Texas Tech's Raider Red Design Mark. A true and correct copy of Defendants' Petition for Cancellation is attached hereto as Exhibit 6. Defendants have also initiated a declaratory judgment action solely against Plaintiff's licensing agent, CLC, in the United States District Court for the Southern District of Texas (Houston Division), Civ. Action No. H-05-1264, despite the fact that both Defendants and

Plaintiff reside in this District. True and correct copies of Defendants' Complaint and CLC's Answer in the above-referenced action are attached hereto as Exhibits 7 and 8, respectively.

20.    Defendants' use of the name of its retail store, Red Raider Outfitter, and its related websites, operating under domain names including but not limited to www.redraideroutfitter.com and www.texastechoutfitter.com, are also calculated to conjure and trade upon the identity of Texas Tech. A true and correct copy of print-outs of a web page from Defendants' website is attached hereto as Exhibit 9.

21.    Defendants' unlicensed products are not manufactured by Plaintiff, nor were they licensed, authorized, sponsored, endorsed or approved by Plaintiff.

22.    Plaintiff's Marks were used extensively and continuously before Defendants manufactured, offered for sale, or sold Defendants' products.

23.    Defendants' products are similar to and compete with goods sold or licensed by Plaintiff, and are sold through the same channels of trade. Defendants sell their products at or near the University, and Defendants' unlicensed and unauthorized products appeared directly alongside merchandise authorized by Plaintiff. Defendants do everything in their power to ensure that their proximity to Plaintiff will exacerbate and increase the confusion caused by their unlicensed and unauthorized merchandise.

24.    Defendants' products are likely to deceive, confuse and mislead prospective purchasers and purchasers into believing that Defendants' unlicensed and unauthorized products were produced or authorized by or in some manner associated with Plaintiff. The likelihood of confusion, mistake and deception engendered by Defendants' unlicensed and unauthorized products is causing irreparable harm to Plaintiff.

25.     Purchasers and prospective purchasers viewing Defendants' unlicensed and unauthorized products and perceiving a defect, lack of quality, or any impropriety are likely to mistakenly attribute them to Plaintiff.  By causing such a likelihood of confusion, mistake and deception, Defendants are inflicting irreparable harm to Plaintiff's goodwill.

26.     Defendants' unlicensed and unauthorized merchandise is calculated to trade on the valuable goodwill and commercial magnetism of Plaintiff's reputation and identity in Lubbock and elsewhere.  Defendants are attempting to pass off their merchandise as that of Plaintiff.

27.     Defendants willfully, intentionally and maliciously used Plaintiff's Marks, or adopted imitations of Plaintiff's Marks and combined said imitations with other material likely to cause and enhance confusion, and have otherwise deliberately attempted to pass off their unlicensed and unauthorized products as those provided or licensed by Plaintiff.

### COUNT I
### FEDERAL TRADEMARK INFRINGEMENT

28.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-27.

29.     Defendants are using confusingly similar imitations of the TEXAS TECH name and mark and the federally registered Raider Red Design Mark on unlicensed and unauthorized merchandise.  This conduct is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' unlicensed and unauthorized goods are manufactured or distributed by Plaintiff or are associated or connected with Plaintiff, or have the sponsorship, endorsement or approval of Plaintiff.

30.     Defendants have used confusingly similar imitations of Plaintiff's federally registered marks in violation of 15 U.S.C. § 1114, and Defendants' activities have caused and,

unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to the Plaintiff's goodwill and reputation as symbolized by Plaintiff's federally registered marks, for which Plaintiff has no adequate remedy at law.

31.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's federally registered marks to Plaintiff's great and irreparable injury.

32.     Defendants have caused and are likely to continue causing substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and impoundment and destruction of Defendants' infringing products and to recover actual damages, Defendants' profits, enhanced profits and damages, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, 1117, 1118.

COUNT II
FEDERAL UNFAIR COMPETITION

33.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-32 as if fully set forth here.

34.     Defendants' unlicensed and unauthorized goods and services have caused and are likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods and services are manufactured or distributed by Plaintiff or are associated or connected with Plaintiff, or have the sponsorship, endorsement or approval of Plaintiff.

35.     Defendants have made false representations, false descriptions, and false designations of origin in violation of 15 U.S.C. § 1125(a), including, but not limited to, Defendants' commercial and merchandising use of (i) confusingly similar imitations of the

Raider Red Design Mark; (ii) the phrase WRECK 'EM TECH, the domain name www.texastechoutfitter.com, and other imitations of the TEXAS TECH name and mark; and (iii) the term RAIDERLAND, the business name and related domain name RED RAIDER OUTFITTER, and other imitations of the RED RAIDERS mark. Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiff's goodwill and reputation, for which Plaintiff has no adequate remedy at law.

36.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff to the great and irreparable injury of Plaintiff.

37.     Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and impoundment and destruction of Defendants' infringing products and to recover actual damages, profits, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116 and 1117.

COUNT III
BREACH OF CONTRACT

38. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-37 as if fully set forth here.

39.     The License Agreement is a valid and binding contract, with provisions and obligations that survive the end of the term of the license. The License Agreement was entered into by CLC on behalf of Plaintiff, and Plaintiff has the right to enforce its provisions.

40. Defendants have breached their obligation to refrain from using Plaintiff's "Licensed Indicia," as that term is defined in the License Agreement.

- 11 -

41.     Defendants have breached their obligation to refrain from applying to register marks that incorporate or consist of Plaintiff's Licensed Indicia.

42.     Defendants' breach of their contractual obligations has damaged Plaintiff and is inflicting irreparable harm on Plaintiff, as a result of which Plaintiff is entitled to specific performance and money damages.

COUNT IV<br>STATE TRADEMARK INFRINGEMENT

43.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-42 as if fully set forth here.

44.     Plaintiff is the owner of valid and subsisting state registrations for the TEXAS TECH name and mark, the RED RAIDERS mark, and combinations thereof, as identified above.

45.     Defendants' unauthorized use in commerce of Plaintiff's state registered marks or reproductions, counterfeits, copies or colorable imitations thereof, in connection with Defendants' unlicensed and unauthorized goods, or Defendants' advertising thereof, is likely to deceive or cause confusion or mistake as to the source of the goods.

46.     Defendants' unauthorized use in commerce of Plaintiff's state registered marks or reproductions, counterfeits, copies or colorable imitations thereof, and the application of those marks or imitations thereof to labels, packaging, prints, signs, or advertisements, with the intent of selling Defendants' unlicensed and unauthorized goods in this State is likely to deceive or cause confusion or mistake as to the source of origin of the goods.

47.     Defendants are causing and will continue to cause irreparable injury to Plaintiff's business reputation and the good will represented by the state registered marks, in violation of

Tex. Bus. & Comm. Code  Ann. §§ 16:26(a) & (b), and Plaintiff therefore is entitled to injunctive relief and damages in an amount to be determined at trial.

## COUNT V
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

48.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-47 as if fully set forth here.

49.    Defendants' acts referenced hereinabove constitute common law trademark infringement and unfair competition, and have created and will continue to create a likelihood of confusion, to the irreparable injury of Plaintiff unless restrained by this Court.  Plaintiff has no adequate remedy at law for this injury.

50.    Defendants acted with full knowledge of Plaintiff, Plaintiff's Marks, and Plaintiff's statutory and common law rights therein and without regard to the likelihood of confusion of the public created by Defendants' activities.

51.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the good will associated with the Plaintiff, and to pass off their goods as those of Plaintiff, to the great and irreparable injury of Plaintiff.

52.    As an initial matter, Plaintiff is entitled to permanent injunctive relief for the irreparable harm caused by Defendants.  As a result of Defendants' acts, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT VI
## FEDERAL TRADEMARK DILUTION

53.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-52 as if fully set forth here.

54.    Plaintiff's Marks are distinctive, strong, and famous and became so before Defendants' activities described in this Complaint.

55.    Defendants are making unlicensed and unauthorized commercial use in commerce of Plaintiff's Marks, and Defendants activities have caused and are causing dilution of the distinctive quality of Plaintiff's Marks.   Defendants' conduct erodes the public's exclusive identification of these marks with Plaintiff and tarnishes and degrades the positive associations and prestigious connotations of the marks.

56.    Defendants willfully intended to trade on Plaintiff's reputation and to cause dilution of Plaintiff's Marks.

57.    Plaintiff therefore is entitled to injunctive relief and impoundment and destruction of Defendants' infringing products and to recover actual damages, profits, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(c), 1116 and 1117.

COUNT VII
STATE TRADEMARK DILUTION AND INJURY TO BUSINESS REPUTATION

58.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-57 as if fully set forth here.

59.    Plaintiff's Marks are distinctive, strong, and famous and became so before Defendants' activities described in this Complaint.

60.    Defendants are making unlicensed and unauthorized commercial use in commerce of Plaintiff's Marks, and Defendants' activities have caused and are causing dilution of the distinctive quality of Plaintiff's Marks.   Defendants' conduct blurs the public's exclusive identification of these marks with Plaintiff and tarnishes and degrades the positive associations and prestigious connotations of the marks.   As a result of Defendants' acts referenced

hereinabove, Plaintiff has suffered and is likely to suffer irreparable injury to its business reputation and trade name.

61.    Defendants' acts constitute a violation of the Texas Anti-Dilution Statute, Tex. Bus. & Comm. Code Ann. § 16:29.

62.    As a result of Defendants' acts, Defendants have caused and will continue to cause injury to Plaintiff, and Plaintiff is entitled to injunctive relief.

WHEREFORE, Plaintiff requests a jury trial on all claims so triable and prays that:

1.    Defendants and all agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, be enjoined permanently from:

   a.    using Plaintiff's Marks or any other copy, reproduction, or colorable imitation or simulation of Plaintiff's Marks on or in connection with Defendants' unlicensed and unauthorized merchandise, or other goods or services, or the goods or services of any entity with which Mr. John Spiegelberg is associated or affiliated;

   b.    using any trademark, service mark, name, logo, design, color scheme, or source designation of any kind on or in connection with Defendants' unlicensed and unauthorized apparel or other goods or services, or the goods or services of any entity with which Mr. John Spiegelberg is associated or affiliated, that is a copy, reproduction, colorable imitation, or simulation of, or confusingly

similar to, or in any way similar to or dilutive of Plaintiff's trademarks, service marks, names, logos, or color schemes;

c.      using any trademark, service mark, name, logo, design, color scheme, or source designation of any kind on or in connection with Defendants' unlicensed and unauthorized apparel or other goods or services, or the goods or services of any entity with which Mr. John Spiegelberg is associated or affiliated, that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiff, or are sponsored or authorized by or in any way connected or related to Plaintiff; and

d.      passing off, palming off, or assisting in passing off or palming off, Defendants' websites, unlicensed and unauthorized apparel, or other goods or services, or the goods or services of any entity with which Mr. John Spiegelberg is affiliated or associated, as those of Plaintiff, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

2.      Defendants be ordered to recall any products found to infringe or violate Plaintiff's rights which have been shipped by Defendants, or under their authority, to any customer including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each such customer a copy of this Court's order as it relates to said injunctive relief against Defendants;

3.    Defendants be ordered to deliver up for impoundment and for destruction all clothing items or other merchandise, bags, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional material, stationery or other materials in the possession, custody, or under the control of Defendants that are found to infringe any of Plaintiff's Marks or that otherwise unfairly compete with Plaintiff and its products and services;

4.    Defendants' pending trademark applications for RAIDERLAND, WRECK 'EM TECH, and any other mark consisting of or incorporating Plaintiff's Marks or any material similar thereto be denied and that the Patent and Trademark Office take all steps and actions necessary to effectuate said denial;

5.    Defendants' pending petition to cancel Plaintiff's registration for its Raider Red Design mark be denied and that the Patent and Trademark Office take all steps and actions necessary to effectuate said denial;

6.    Defendants be compelled to account to Plaintiff for any and all profits derived by Defendants for products found to violate Plaintiff's rights, and to pay damages to Plaintiff for the acts forming the basis of this Complaint;

7.    Based on Defendants' intentional use of Plaintiff's Marks or colorable imitations thereof on unlicensed and unauthorized merchandise and intentional effort to pass off Defendants' products, Plaintiff be awarded enhanced profits and trebled and punitive damages;

8.    Defendants be required to pay to Plaintiff the costs of this action and its reasonable attorneys' fees;

9.    Defendants be required to pay prejudgment and post judgment interest on any monetary award; and

10.    Plaintiff have such other and further relief as the Court may deem just.

Dated: August 24, 2005

JONES, FLYGARE, BROWN & WHARTON
A Professional Corporation

James L. Wharton
State Bar No. 21243500
P.O. Box 2426
Lubbock, Texas 79408
Telephone: (806) 765-8851
Facsimile: (806) 765-8829


OF COUNSEL:
Christopher J. Kellner
James H. Sullivan
KILPATRICK STOCKTON L.L.P.
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4530
Telephone: (404) 815-6500
Facsimile: (806) 815-6555

**ATTORNEYS FOR TEXAS TECH UNIVERSITY**

Exhibit 1

Trademark Electronic Search System (TESS)                                    Page 1 of 2



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

Trademarks > Trademark Electronic Search System (TESS)

## Trademark Electronic Search System(Tess)

*TESS was last updated on Sat Aug 20 04:10:37 EDT 2005*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | BOTTOM | HELP |

**Logout** Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR Status | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | TEXAS TECH UNIVERSITY |
| **Goods and Services** | IC 025. US 022 039. G & S: Clothing, namely, shirts, sweatsuits, sweat shirts, sweat pants, t-shirts, caps, hats, jackets, and coats. FIRST USE: 19690000. FIRST USE IN COMMERCE: 19690000 |
| | IC 041. US 100 101 107. G & S: Educational services, namely providing courses of instruction at the university level, and arranging and conducting educational conferences and academic exhibitions; and entertainment services, namely arranging and conducting athletic competitions, athletic tournaments, exhibitions, live performances, and festivals. FIRST USE: 19690901. FIRST USE IN COMMERCE: 19690901 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 76031511 |
| **Filing Date** | April 20, 2000 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | September 4, 2001 |
| **Registration Number** | 2511970 |
| **Registration Date** | November 27, 2001 |
| **Owner** | (REGISTRANT) Texas Tech University INSTITUTION OF HIGHER LEARNING TEXAS Department of Intercollegiate Athletics Box 43021 Lubbock TEXAS 794093021 |
| **Attorney of Record** | William H. Brewster |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "TECH UNIVERSITY" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK. SERVICE MARK |

| | |
|---|---|
| **Register** | PRINCIPAL-2(F) |
| **Live/Dead Indicator** | LIVE |

TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   TOP   HELP

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

**Thank you for your request. Here are the latest results from the <u>TARR web server.</u>**

**This page was generated by the TARR system on** 2005-08-23 15:02:11 ET

**Serial Number:** 76031511

**Registration Number:** 2511970

**Mark (words only):** TEXAS TECH UNIVERSITY

**Standard Character claim:** No

**Current Status:** Registered.

**Date of Status:** 2001-11-27

**Filing Date:** 2000-04-20

**Transformed into a National Application:** No

**Registration Date:** 2001-11-27

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 109

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at <u>TrademarkAssistanceCenter@uspto.gov</u>**

**Current Location:** 900 -File Repository (Franconia)

**Date In Location:** 2001-12-10

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. Texas Tech University

**Address:**
Texas Tech University
Department of Intercollegiate Athletics Box 43021
Lubbock, TX 794093021
United States
**Legal Entity Type:** INSTITUTION OF HIGHER LEARNING
**State or Country Where Organized:** Texas

---

## GOODS AND/OR SERVICES

**International Class:** 025
Clothing, namely, shirts, sweatsuits, sweat shirts, sweat pants, t-shirts, caps, hats, jackets, and coats

**First Use Date:** 1969-00-00
**First Use in Commerce Date:** 1969-00-00

**Basis:** 1(a)

**International Class:** 041
Educational services, namely providing courses of instruction at the university level, and arranging and conducting educational conferences and academic exhibitions; and entertainment services, namely arranging and conducting athletic competitions, athletic tournaments, exhibitions, live performances, and festivals
**First Use Date:** 1969-09-01
**First Use in Commerce Date:** 1969-09-01

**Basis:** 1(a)

## ADDITIONAL INFORMATION

**Disclaimer:** "TECH UNIVERSITY"

**Section 2(f)**

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

## PROSECUTION HISTORY

2001-11-27 - Registered - Principal Register

2001-09-04 - Published for opposition

2001-08-15 - Notice of publication

2001-06-13 - Approved for Pub - Principal Register (Initial exam)

2001-04-25 - Communication received from applicant

2000-10-25 - Non-final action mailed

2000-09-22 - Case file assigned to examining attorney

## CORRESPONDENCE INFORMATION

**Correspondent**
William H. Brewster (Attorney of record)

WILLIAM H. BREWSTER
KILPATRICK STOCKTON LLP

1100 PEACHTREE STREET - SUITE 2800
ATLANTA, GEORGIA 30309-4530

---

Exhibit 2

**Int. Cls.: 16, 25 and 41**

**Prior U.S. Cls.: 2, 5, 22, 23, 29, 37, 38, 39, 50, 100, 101 and 107**

## United States Patent and Trademark Office

**Reg. No. 2,433,675**
**Registered Mar. 6, 2001**

## TRADEMARK
## SERVICE MARK
### PRINCIPAL REGISTER



TEXAS TECH UNIVERSITY (TEXAS INSTITU-
TION OF HIGHER LEARNING)
C/O DEPARTMENT OF INTERCOLLEGIATE ATH-
LETICS
BOX 43021
LUBBOCK, TX 794093021

FOR: PAPER GOODS AND PRINTED MATTER,
NAMELY, NOTECARDS AND GAME PROGRAMS,
IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 0-0-1970; IN COMMERCE 0-0-1970.

FOR: CLOTHING, NAMELY, SHIRTS, T-SHIRTS,
CAPS AND BOXER SHORTS, IN CLASS 25 (U.S. CLS.
22 AND 39).

FIRST USE 0-0-1971; IN COMMERCE 0-0-1971.

FOR: ENTERTAINMENT SERVICES, NAMELY,
ARRANGING AND CONDUCTING ATHLETIC
EVENTS, TOURNAMENTS AND EXHIBITIONS, IN
CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 0-0-1971; IN COMMERCE 0-0-1971.

SER. NO. 76-032,031, FILED 4-20-2000.

GERALD C. SEEGARS, EXAMINING ATTORNEY



RECEIVED
MAR 1 4 2001

CPI Docketing
Initials
Date 3-19-01

Exhibit 3

THE COLLEGIATE LICENSING COMPANY
LICENSE AGREEMENT TO USE LICENSED INDICIA
OF MEMBER UNIVERSITIES

This is an Agreement between __OUTFITTER dba__ __RED RAIDER OUTFITTER & GREEK OUTFITTER__ a _____ organized under the laws of the state of ____TEXAS____, having its principal place of business at __2416 BROADWAY__ __LUBBOCK, TX  79401__ ("Licensee"), and The Collegiate Licensing Company, a Georgia corporation, having its principal place of business at 320 Interstate North, Suite 102, Atlanta, Georgia 30339 ("CLC").

WHEREAS CLC represents licensing interests of various colleges and universities, and has the exclusive rights, as agent, to license for commercial purposes the use of certain indicia.

WHEREAS Licensee desires to be licensed to utilize certain indicia in connection with the manufacture, distribution and sale of certain products, and CLC is willing, subject to certain conditions, to grant such a license.

NOW, THEREFORE, in consideration of the parties' mutual covenants and undertakings, and other good and valuable consideration the receipt and sufficiency of which are acknowledged, the parties agree as follows:

## 1. DEFINITIONS

(a) "Member Universities" means the colleges and universities currently represented by CLC including any additions or deletions as from time to time may be made by CLC.

(b) "Licensed Indicia" means the names, symbols, designs, and colors of the Member Universities, including without limitation, the trademarks, service marks, designs, team names, nicknames, abbreviations, city/state names in the appropriate context, slogans, logographics, mascots, seals and other symbols associated with or referring to the respective Member Universities. Licensed Indicia includes those in Appendix B and indicia adopted, used and approved for use by the Member Universities. Any newly adopted indicia shall be deemed to be additions to the Licensed Indicia in Appendix B and shall be subject to the terms and conditions of the Agreement.

(c) "Licensed Articles" means the products listed in Appendix C and bearing Licensed Indicia.

(d) "Retail Sales" means the sale of Licensed Articles directly to or for retail outlets, mail order, or catalogs, where the Licensed Articles are ultimately sold to consumers. Retail Sales does not include the sale of Licensed Articles as Premiums, which

requires separate agreements executed by CLC with both the manufacturer and user of the Premium.

(e) "Net Sales" means the total gross invoice amounts of the Licensed Articles billed customers or payments received, whichever is greater, including the royalty amount, less lawful quantity discounts actually allowed and taken as such by customers and shown on the invoice, less any credits for returns actually made as supported by credit memoranda issued to customers, and less sales taxes and prepaid transportation charges on Licensed Articles if shipped by Licensee. No deduction shall be made for direct or indirect costs incurred in the manufacturing, selling, advertising (including cooperative and promotional allowances) or distributing the Licensed Articles, nor shall any deduction be made for uncollectible accounts, cash discounts, similar allowances or any other amounts.

(f) "Premium" means any product bearing Licensed Indicia sold or given away for the purposes of increasing the sale, promoting, or publicizing any other product, service or establishment, including incentives for sales force, trade or consumer promotions.

## 2. GRANT OF LICENSE

(a) Grant: CLC grants to Licensee the nonexclusive, nontransferable license to use the Licensed Indicia on the Licensed Articles for Retail Sales in the Territory during the Term. This license applies only to: the Member Universities listed on Appendix A and any changes thereto; the approved use of the Licensed Indicia shown on Appendix B and any changes thereto; and, the approved Licensed Articles described in Appendix C and any changes thereto.

(b) Territory: The Territory is the United States of America, its territories and possessions, the Commonwealth of Puerto Rico, and United States military bases abroad. Licensee shall not distribute or sell Licensed Articles outside the Territory, or to any person or entity that Licensee knows or has reason to know intends or is likely to resell Licensed Articles outside the Territory.

(c) Term: This Agreement shall begin effect on the last date of signature below and shall expire __SEPTEMBER 30, 1998__ ,unless terminated sooner or extended in the manner provided in this Agreement.

(d) Renewal: Upon expiration, Licensee shall be considered for renewal of this Agreement. Renewal is at the sole discretion of CLC and Member Universities.

(e)   Distribution.  In the event Licensee sells or distributes Licensed Articles at a special price directly or indirectly to itself, including without limitation, any subsidiary of Licensee, or to any other person, firm or corporation related in any manner to Licensee or its officers, directors or major stockholders, or to an exclusive distributor, Licensee shall pay royalties with respect to such sales or distribution based upon the Net Sales price generally charged the trade by Licensee.

(f) Limitation on License:  This license is subject to the following additional limitations.

(1)   Licensee shall not use the Licensed Indicia for any purpose other than upon or in connection with the approved Licensed Articles listed in Appendix C.  Any additions to the Licensed Articles and/or new designs shall be submitted in writing to CLC and samples shall be submitted to CLC for prior written approval.  Licensee shall, upon request by CLC, immediately recall any unauthorized products or designs from the marketplace, and destroy or submit to CLC at Licensee's expense said products or designs, at CLC's option.

(2)   Licensee shall not provide any method of application of Licensed Indicia to any party unless CLC authorizes Licensee to provide said application under the terms of an authorized manufacturer's agreement.

(3)   Licensee shall not contract with any party for the production or application of Licensed Indicia by that party ("Manufacturer") without CLC's authorization.  In the event that Licensee desires to have a Manufacturer produce one or more Licensed Article, or any component thereof, Licensee shall provide CLC with the name, address, telephone number and name of the principal contact of the proposed Manufacturer.  CLC must approve any Manufacturer, and the Manufacturer must execute an authorized manufacturer's or supplier's agreement provided by CLC prior to use of the Licensed Indicia.  In addition, Licensee shall take the steps necessary to ensure the following: Manufacturer produces the Licensed Articles only as and when directed by Licensee, which remains fully responsible for ensuring that the Licensed Articles are manufactured in accordance with the terms herein including approval; Manufacturer does not distribute, sell or supply the Licensed Articles to any person or entity other than Licensee; Manufacturer does not delegate in any manner whatsoever its obligations with respect to the Licensed Articles.  Licensee's failure to comply with this Paragraph may result in termination of this Agreement and/or confiscation and seizure of Licensed Articles.   CLC hereby reserves the right to

terminate in its discretion the engagement of any Manufacturer at any time.

(4)   Licensee shall not engage in the direct shipment of off-shore manufactured Licensed Articles to distributors, wholesalers, retailers, etc. Licensee must take receipt of Licensed Articles at the applicable U.S. port of entry.

(5) Licensee shall not manufacture, sell, or distribute articles bearing Licensed Indicia as Premiums, for publicity purposes, for fund raising, as giveaways, in combination sales, or for disposal under similar methods of merchandising.  Licensee shall not use any of the Licensed Indicia in connection with any sweepstake, lottery, game of chance or any similar promotional or sales program.   In the event Licensee desires to use Licensed Articles for acceptable promotional purposes, Licensee shall obtain written approval from CLC.

(6) Licensee is not permitted, without the applicable Member University's prior consent, to promote or market a Licensed Article by means of a direct mailing or any other direct solicitation to a list of alumni, students, parents, athletic contributors, faculty or staff, or other group associated with the Member University, regardless of how Licensee acquires such list.

(7) Licensee recognizes that any person who has collegiate athletic eligibility cannot have his or her name and/or likeness utilized on any commercial product without the express written permission of CLC and/or the Member University.  Therefore, in conducting licensed activity under this Agreement, Licensee shall not encourage or participate in any activity that would cause an athlete or a Member University to violate any rule of the National Collegiate Athletic Association (NCAA) or other governing body.

3.  PROMOTIONAL PROGRAMS

(a)   General:   Licensee   recognizes   that promotional efforts are important to the success of this program and will assist CLC with such promotional efforts by its participation.

(b)   Merchandising Directory:  CLC plans to produce an annual merchandising directory in which participation by Licensee is encouraged.  Licensee will provide all necessary Licensed Articles for display therein upon request of CLC.  The display of Licensee's Licensed Articles, and the cost of the development and promotion of the directory and for periodic changes therein, presently contemplated to be annual, shall be agreed upon in advance by CLC and Licensee.

2

## 4. SELECTION OF MEMBER UNIVERSITIES AND PERFORMANCE GUARANTEE

(a) Selections: Prior to execution of this Agreement, Licensee selected from a list of available Member Universities those Member Universities whose Licensed Indicia Licensee initially desired to use. Appendix A indicates those Member Universities whose Licensed Indicia Licensee is authorized to use on the Licensed Articles listed in Appendix C. Licensee may from time to time request the addition of a Member University to this Agreement as provided in Paragraph 6(d) hereof.

(b) Performance: With respect to each of the Member Universities with which Licensee is licensed, Licensee undertakes to make and maintain adequate arrangements for the broadest feasible distribution of Licensed Articles throughout the Territory, consistent with its current marketing and distribution plans and objectives. Licensee agrees to maintain adequate inventories of Licensed Articles as an essential part of the distribution program.

(c) Licensee shall inform CLC in writing of any complaint regarding the Licensed Articles within ten (10) days of Licensee becoming aware of any complaint.

## 5. NONEXCLUSIVITY

Nothing in this Agreement shall be construed to prevent CLC or any Member University from granting any other licenses for use of the Licensed Indicia.

## 6. MODIFICATION OF APPENDICES

(a) The Member Universities and their royalty charges shown on Appendix A, the Licensed Indicia on Appendix B, the Member University policies including those on Appendix B-1, and the Licensed Articles on Appendix C may be changed by CLC when and if such changes are directed by the Member Universities.

(b) Through periodic advisory bulletins or notices, CLC will give Licensee written official notice of any changes to appendices or policies. CLC shall give Licensee ninety (90) days written notice of any changes in Member University royalty charges. Licensee, upon receipt of the bulletins or notices, is responsible for distributing them promptly to the appropriate party(s) and complying with the modified appendices and policies.

(c) If there is any change to Appendices A, B, B-1, or C, Licensee agrees that its permission to use the affected Licensed Indicia or to manufacture, distribute, or sell the Licensed Articles pursuant to this Agreement

shall cease on the effective date of notice. In such event, those provisions of Paragraph 20 relating to disposal of inventory shall become effective for the affected Licensed Indicia or Licensed Articles unless Licensee obtains written permission from the Member University concerned to continue to use the Licensed Indicia, or to sell the Licensed Articles.

(d) Upon notification by CLC of the addition of a Member University to the CLC program, or at any other time, Licensee may request in writing the addition of a Member University to the Agreement. Any such addition will require an addendum to Appendix A. Such addendum will be fully executed only upon Licensee's completion of product and design approval requirements.

(e) Any unauthorized use by Licensee of any Licensed Indicia of any Member University shall constitute grounds for immediate termination of this Agreement and may result in action against Licensee for trademark infringement and/or unfair competition.

## 7. PAYMENTS

(a) Rate: Licensee agrees that it shall pay to CLC the applicable royalty rate set forth adjacent to the respective Member Universities listed in Appendix A. The royalties paid ("Royalty Payments") shall be based upon Net Sales, as defined in Paragraph 1(e), of all items containing the Licensed Indicia sold during the Term and any renewal, and during any period allowed pursuant to Paragraph 20.

(b) For purposes of determining the Royalty Payments, sales shall be deemed to have been made at the time of invoicing or billing for Licensed Articles or at the time of delivery thereof, whichever comes first.

(c) Royalty Payments shall be (i) paid by Licensee to CLC on all Licensed Articles (including without limitation any seconds, irregulars, etc. distributed by Licensee pursuant to the provisions of Paragraph 14(c) of this Agreement) distributed by Licensee or any of its affiliated, associated or subsidiary companies even if not billed or billed at less than the usual Net Sales price for such Licensed Articles, and (ii) based upon the usual Net Sales price for such Licensed Articles sold to the trade by Licensee.

(d) Advance Payments: Upon execution of this Agreement by Licensee, and upon any renewal hereof, Licensee shall pay CLC, as a nonrefundable payment, the Advance Payments set forth on Appendix A. Upon renewal, the Advance Payments will be prorated, where applicable, as per CLC's written instructions. Licensee may apply the Advance Payments as credits against

Royalty Payments due for the specific Member Universities.

(e) Administrative Fee: Upon execution of this Agreement by Licensee, and upon any renewal hereof, Licensee shall pay CLC, as a non-refundable payment, the Administrative Fee set forth on Appendix A.

## 8. MULTIPLE ROYALTIES

CLC recognizes that Licensee may be subject to other license agreements which, together with this Agreement, would subject certain Licensed Articles to one or more additional royalty payments. Royalty Payments required to be paid to CLC for Licensed Articles may be reduced by mutually agreed upon amounts set forth in writing.

## 9. STATEMENT, PAYMENTS AND PENALTIES

(a) On or before the twentieth (20) day of each month, Licensee shall submit to CLC, in a format provided by CLC, full and accurate statements showing the quantity, description, and Net Sales of the Licensed Articles distributed and/or sold during the preceding month, listed (1) by Licensed Article and (2) by Member University, and including any additional information kept in the normal course of business by the Licensee which is appropriate to enable an independent determination of the amount due hereunder with respect to the Licensed Indicia of each Member University. All Royalty Payments then due CLC shall be made simultaneously with the submission of the statements. Such statements shall be submitted whether or not they reflect any sales.

(b) Failure to submit timely or accurate statements and/or Royalty Payments shall result in an additional charge of 1 1/2% per month on any balance unpaid as of the applicable reporting period.

(c) The receipt and/or acceptance by CLC of the statements furnished or Royalty Payments, or the cashing of any royalty checks paid hereunder, shall not preclude CLC from questioning the correctness thereof at any time. In the event that any inconsistencies or mistakes are discovered in such statements or payments, they shall immediately be rectified by the Licensee and the appropriate payment shall be made by the Licensee.

(d) Licensee shall, unless otherwise directed in writing by CLC, send all Royalty Payments and statements to:

The Collegiate Licensing Company
320 Interstate North
Suite 102
Atlanta, Georgia 30339

## 10. EXEMPT AREA

On or around each Member University campus, certain accounts or areas may be exempt from the obligation to pay Royalty Payments for sales made and delivered by Licensee to customers located within the exempt area. Appendix B-1 denotes those exemptions. CLC reserves the right to add to or delete from Appendix B-1, and will notify Licensee of these changes in writing as provided in Paragraph 6(b).

## 11. OWNERSHIP OF LICENSED INDICIA AND PROTECTION OF RIGHTS

(a) Licensee acknowledges that the Member Universities own the Licensed Indicia in Appendix B, as well as any indicia adopted and used or approved for use by the Member Universities, and that each of the Licensed Indicia is valid, and that each Member University has the exclusive right to use each of its Licensed Indicia subject to the revocable license to use the Licensed Indicia. Licensee acknowledges the validity of the state and federal registrations each Member University owns, obtains or acquires for its Licensed Indicia. Licensee shall not, at any time, file any trademark application with the United States Patent and Trademark Office, or with any other governmental entity for the Licensed Indicia, whether or not such Licensed Indicia is identified in Appendix B. Licensee shall not use any of the Licensed Indicia or any similar mark as, or as part of, a trademark, service mark, trade name, fictitious name, company or corporate name anywhere in the world. Any trademark or service mark registration obtained or applied for that contains the Licensed Indicia or any similar mark shall be transferred to the applicable Member University without compensation.

(b) Licensee shall not oppose or seek to cancel or challenge, in any forum, including, but not limited to, the United States Patent and Trademark Office, any application or registration of the Member Universities. Licensee shall not object to, or file any action or lawsuit because of, any use by any of the Member Universities of any Licensed Indicia for any goods or services, whether such use is by the Member Universities directly or through different licensees or authorized users.

4

(c) Licensee recognizes the great value of the good will associated with the Licensed Indicia and acknowledges that such good will belongs to the Member Universities, and that such Licensed Indicia have secondary meaning. Licensee shall not, during the term of this Agreement or thereafter, attack the property rights of the Member Universities, attack the validity of this Agreement, or use the Licensed Indicia or any similar mark in any manner other than as licensed hereunder.

(d) Licensee agrees to assist CLC in the protection of the several and joint rights of the Member Universities and CLC in and to the Licensed Indicia and shall provide, at reasonable cost to be borne by CLC, any evidence, documents, and testimony concerning the use by Licensee of any one or more of the Licensed Indicia, which CLC may request for use in obtaining, defending, or enforcing rights in any Licensed Indicia or related application or registration. Licensee shall notify CLC in writing of any infringements or imitations by others of the Licensed Indicia of which it is aware. CLC and the applicable Member University shall have the sole right to determine whether or not any action shall be taken on account of any such infringements or imitations. Licensee shall not institute any suit or take any action on account of any such infringements or imitations without first obtaining the written consent of CLC to do so. Licensee agrees that it is not entitled to share in any proceeds received by CLC or any Member University (by settlement or otherwise) in connection with any formal or informal action brought by CLC, Member Universities or other entity.

(e) Nothing in this Agreement gives Licensee any right, title, or interest in any Licensed Indicia except the right to use in accordance with the terms of this Agreement. Licensee's use of any Licensed Indicia inures to the benefit of the respective Member University.

(f) Licensee acknowledges that any original designs, artwork or other compilations or derivatives ("Works") created by it pursuant to this Agreement that contain the Licensed Indicia are compilations or derivatives as those terms are used in Section 103 of the Copyright Act. Therefore, any rights, including copyrights, that Licensee might have in those original Works do not extend to any portion or aspect of the Licensed Indicia or any derivatives thereof, and do not in any way dilute or affect the interests of the Member Universities in the Licensed Indicia or any derivatives thereof. Accordingly, Licensee shall not copy, use, assign or otherwise transfer any rights in any Works with any portion or aspect of the Licensed Indicia or any derivatives thereof included, except in accordance

with this Agreement. Licensee shall not affix a copyright notice to any product bearing a Member University's Licensed Indicia, or otherwise attempt to obtain or assert copyright rights in any artwork or design which contains a Member University's Licensed Indicia, without the express written authorization of CLC.

(g) Licensee acknowledges that its breach or threatened breach of this Agreement will result in immediate and irremediable damage to CLC and/or the Member Universities and that money damages alone would be inadequate to compensate CLC and/or the Member Universities. Therefore, in the event of a breach or threatened breach of this Agreement by Licensee, CLC and/or the Member Universities may, in addition to other remedies, immediately obtain and enforce injunctive relief prohibiting the breach or threatened breach or compelling specific performance. In the event of any breach or threatened breach of this Agreement by Licensee or infringement of any rights of the Member Universities, if CLC employs attorneys or incurs other expenses, Licensee shall reimburse CLC for its reasonable attorney's fees and other expenses.

## 12. DISPLAY AND APPROVAL OF LICENSED INDICIA

(a) Licensee shall use the Licensed Indicia properly on all Licensed Articles, as well as labels, containers, packages, tags, and displays (collectively "Packaging"), and in all print advertisements and promotional literature, and television and radio commercials (collectively "Advertising"). On all visible Packaging and Advertising, the Licensed Indicia shall be emphasized in relation to surrounding material by using a distinctive type face, color, underlining, or other technique approved by the Member Universities. Any use of any Licensed Indicia shall conform to the requirements as specified in Appendix B. Wherever appropriate, the Licensed Indicia shall be used as a proper adjective, and the common noun for the product shall be used in conjunction with the Licensed Indicia. The proper symbol to identify the Licensed Indicia as a trademark (i.e., the circled "R" symbol if the Licensed Indicia is registered in the United States Patent and Trademark Office or the "TM" symbol if not so registered) shall be placed adjacent to each Licensed Indicia. Except when otherwise expressly authorized in writing by CLC, Licensee shall not use on any one Licensed Article, Packaging or Advertising the Licensed Indicia of more than one Member University.

(b) CLC will provide to Licensee guidance on the proper use of the Licensed Indicia. A true representation or example of any proposed use by Licensee of any of the Licensed Indicia listed, in any

5

visible or audible medium, and all proposed products, Packaging and Advertising containing or referring to any Licensed Indicia, shall be submitted at Licensee's expense to CLC for approval prior to such use. Licensee shall not use any Licensed Indicia in any form or in any material disapproved or not approved by CLC.

(c) Licensee shall display on each Licensed Article or its Packaging and Advertising the trademark and license notices required by CLC's written instructions in effect as of the date of manufacture.

## 13. DISPLAY OF OFFICIAL TAG

(a) Licensee shall, prior to distribution or sale of any Licensed Article, affix to each Licensed Article, its Packaging and Advertising an "Officially Licensed Collegiate Products" tag or label in the form prescribed by CLC ("Official Label"). In addition, Licensee shall affix its name to each Licensed Article, its Packaging and Advertising. It is acceptable for Licensee's name to appear on the Official Label subject to prior approval by CLC. Licensee shall obtain Official Labels from one or more suppliers authorized by CLC to produce those labels or shall manufacture Official Labels in-house subject to prior written approval by CLC.

(b) Licensee is responsible for affixing the Official Label to each Licensed Article, its Packaging and Advertising. Licensee shall not provide Official Labels to any third party for any purpose whatsoever, without prior written approval by CLC.

(c) Licensee agrees to defend, indemnify and hold harmless CLC, the Member Universities, and those Indemnified Parties set forth in Paragraph 17 from all liability claims, costs or damages, including but not limited to any liability for the conversion or wrongful seizure of any of the Licensed Articles not containing the Official Label and Licensee's name as required by this Paragraph. This provision is in addition to and in no way limits Paragraph 17.

## 14. PROCEDURE FOR PRODUCT APPROVAL

(a) Licensee understands and agrees that it is an essential condition of this Agreement to protect the high reputations enjoyed by the Member Universities, and that the products and designs sold, promoted, or advertised in association with any of the Licensed Indicia shall be of high and consistent quality, subject to the approval and continuing supervision and control of CLC and the Member Universities. All products, Packaging and/or designs containing the Licensed Indicia must receive written quality control approval by CLC as provided herein.

(b) The standards, specifications, and characteristics of each Licensed Article to be sold under each of the Licensed Indicia are set out in Appendix C, or in an attachment to Appendix C. Licensee agrees to adhere strictly to the agreed standards, specifications, and characteristics for each Licensed Article sold under each of the Licensed Indicia.

(c) Prior to the manufacture, distribution or sale of any product, Packaging, or design containing the Licensed Indicia, Licensee shall submit to CLC, at Licensee's expense, at least one sample of the product, Packaging and/or design for each Member University and one sample for CLC as it would be produced for sale. If CLC approves in writing the product, Packaging and/or design, the same shall be accepted to serve as an example of quality for that product, Packaging and/or design, and production quantities may be manufactured by Licensee in strict conformity with the approved sample. Licensee shall not depart from the approved quality standards in any material respect without the prior written approval of CLC. Products not meeting those standards, including seconds, irregulars, etc., shall not be sold or distributed under any circumstances without CLC's prior written consent.

(d) Licensee may only use the Licensed Indicia as depicted in Appendix B and approved in the manner set forth herein. Licensee may not modify the Licensed Indicia without the express written approval of CLC. The use of the Licensed Indicia in conjunction with original artwork supplied by the Licensee requires the express written approval of CLC. Licensee may submit sketches of proposed artwork for preliminary approval before submitting finished samples.

(e) At time of renewal, or upon request by CLC at any other time, in addition to any other requirement, Licensee shall submit to CLC such number of each product, Packaging and/or design sold under the Licensed Indicia as may be necessary for CLC to examine and test to assure compliance with the quality and standards for products, Packaging and/or designs approved herein. Each product shall be shipped in its usual container or wrapper, together with all labels, tags, and other materials usually accompanying the product. Licensee shall bear the expense of manufacturing and shipping the required number of products, Packaging and/or designs to the destination(s) designated by CLC.

(f) If CLC notifies Licensee of any defect in any product or Packaging, or of any deviation from the approved use of any of the Licensed Indicia, Licensee shall have fifteen (15) days from the date of notification from CLC to correct every noted defect or deviation. Defective products, Packaging and/or designs in

6





Licensee's inventory shall not be sold or distributed and shall, upon request by CLC, be immediately recalled from the marketplace and destroyed or submitted to CLC, at CLC's option and at Licensee's expense. However, if it is possible to correct all defects in the products, Packaging and/or designs in Licensee's inventory, such products, Packaging or designs may be sold after all defects are corrected. CLC and/or its authorized representatives shall have the right at reasonable times without notice to inspect Licensee's plants, warehouses, storage facilities and operations related to the production of Licensed Articles.

## 15. NO JOINT VENTURE OR ENDORSEMENT OF LICENSEE

Nothing in this Agreement shall be construed to place the parties in the relationship of partners, joint venturers or agents, and Licensee shall have no power to obligate or bind CLC or the Member Universities in any manner whatsoever. Neither CLC nor the Member Universities is in any way a guarantor of the quality of any product produced by Licensee. Licensee shall neither state nor imply, directly or indirectly, that the Licensee or its activities, other than under this license, are supported, endorsed or sponsored by CLC or by any Member University and, upon the direction of CLC, shall issue express disclaimers to that effect.

## 16. INFRINGEMENT

Licensee represents and warrants to CLC that all designs and products submitted for approval are not subject to any valid patent, copyright, trademark or any other proprietary rights of any non-consenting third party. Neither CLC nor any Member University shall be liable as the result of activities by Licensee under this Agreement for infringement of any patent, copyright, trademark or other right belonging to any third party, or for damages or costs involved in any proceeding based upon any such infringement, or for any royalty or obligation incurred by Licensee because of any patent, copyright, trademark or other right held by a third party.

## 17. INDEMNIFICATION AND INSURANCE

(a)  Licensee is solely responsible for, and will defend, indemnify and hold harmless CLC, the Member Universities, and their respective officers, agents, and employees (collectively "Indemnified Parties") from any claims, demands, causes of action or damages, including reasonable attorney's fees, arising out of (i) any unauthorized use of or infringement of any patent, copyright, trademark or other proprietary right by Licensee in connection with the designs and Licensed Articles covered by this Agreement, (ii) alleged defects

or deficiencies in said Licensed Articles or the use thereof, or false advertising, fraud, misrepresentation or other claims related to the Licensed Articles not involving a claim of right to the Licensed Indicia, (iii) the unauthorized use of the Licensed Indicia or any breach by Licensee of this Agreement, (iv) libel or slander against, or invasion of the right of privacy, publicity or property of, or violation or misappropriation of any other right of any third party, and/or (v) agreements or alleged agreements made or entered into by Licensee to effectuate the terms of this Agreement. The indemnifications hereunder shall survive the expiration or termination of this Agreement.

(b)  Prior to the first sale of any Licensed Article, Licensee shall obtain, and thereafter maintain, Commercial General Liability insurance, including product and contractual liability insurance, providing adequate protection for the Indemnified Parties as additional insured parties on Licensee's policy against any claims, demands, or causes of action and damages, including reasonable attorney's fees, arising out of any of the circumstances described in Paragraph 17(a) above. Such insurance policy shall not be canceled or materially changed in form without at least thirty (30) days written notice to CLC. CLC shall be furnished with a certificate of such insurance and endorsements in the form prescribed by CLC. Licensee agrees that such insurance policy or policies shall provide coverage of one million dollars ($1,000,000) for personal and advertising injury, bodily injury and property damage arising out of each occurrence, or Licensee's standard insurance policy limits, whichever is greater. However, recognizing that the aforesaid amounts may be inappropriate with regard to specific classes of goods, it is contemplated that CLC may make reasonable adjustment to the foregoing amounts. Any adjustment must be confirmed in writing by CLC.

## 18. RECORDS AND RIGHT TO AUDIT

(a)  Licensee shall keep, maintain and preserve in its principal place of business during the Term, any renewal periods and at least three (3) years following termination or expiration, complete and accurate books, accounts, records and other materials covering all transactions related to this Agreement in a manner such that the information contained in the statements referred to in Paragraph 9 can be readily determined including, without limitation, customer records, invoices, correspondence and banking, financial and other records in Licensee's possession or under its control. CLC and/or its duly authorized representatives shall have the right to inspect and audit all materials related to this Agreement regarding all Member Universities represented by CLC, which right to inspect and audit shall include the conduct of normal audit tests of

additional Licensee records including those covering "non-licensed" sales to verify that they are not sales covered by this Agreement. In addition to the materials required by normal accounting practices, Licensee must retain detail of CLC licensed sales to the invoice number level for audit purposes, and invoices must indicate the Member University name beside each Licensed Article.

(b) Such materials shall be available for inspection and audit (including photocopying) at any time during the Term, any renewal periods and at least three (3) years following termination or expiration during reasonable business hours and upon at least five (5) days notice by CLC and/or its representatives. Licensee will cooperate and will not cause or permit any interference with CLC and/or its representatives in the performance of their duties of inspection and audit. CLC and/or its representatives shall have free and full access to said materials for inspection and audit purposes.

(c) Following the conduct of the audit, Licensee shall take immediate steps to timely resolve all issues raised therein, including payment of any monies owing and due. Should an audit indicate an underpayment of 10% or more or an underpayment of $20,000 or more of the royalties due CLC, the cost of the audit shall be paid by Licensee. Payment of the audit cost is in addition to the full amount of any underpayment including interest as provided in Paragraph 9(b), to be paid by Licensee. Licensee must cure any contract breaches discovered during the audit, provide amended reports if required, and submit the amount of any underpayment including interest and, if applicable, the cost of the audit within thirty (30) days from the date of the conduct of the audit.

## 19. TERMINATION

(a) CLC shall have the right to terminate this Agreement without prejudice to any other rights it may have, whether under the provisions of this Agreement, in law, in equity or otherwise, upon written notice to Licensee at any time should any of the following defaults occur:

(1) Licensee does not begin the bona fide manufacture, distribution, and sale of Licensed Articles within one (1) month of the date of this Agreement.

(2) Licensee fails to continue the bona fide manufacture, distribution, and sale of Licensed Articles during the Term. If, during any calendar quarter of the Term, Licensee fails to sell any of the Licensed Articles or fails to sell any Licensed Articles

for a particular Member University, CLC may terminate this Agreement with respect to said Licensed Article or Member University by giving written notice.

(3) Licensee fails to make any payment due or fails to deliver any required statement, and fails to cure this default within fifteen (15) days from receipt of notice from CLC.

(4) The amounts stated in the periodic statements furnished pursuant to Paragraph 9 are significantly or consistently understated.

(5) Licensee fails to generate royalties during the initial Term or any renewal period that meet or exceed the amount of the Advance Payment amounts as provided in Paragraph 7(d) and Appendix A.

(6) Licensee fails to resolve any issue raised in connection with any audit.

(7) Licensee fails to pay its liabilities when due, or makes any assignment for the benefit of creditors, or files any petition under any federal or state bankruptcy statute, or is adjudicated bankrupt or insolvent, or if any receiver is appointed for its business or property, or if any trustee in bankruptcy shall be appointed under the laws of the United States government or the several states.

(8) Licensee attempts to grant or grants a sublicense or attempts to assign or assigns any right or duty under this Agreement to any person or entity without the prior written consent of CLC.

(9) Licensee or any related entity manufactures, distributes or sells any product infringing or diluting the trademark, property or any other right of any Member University or any other party.

(10) Licensee fails to deliver to CLC or maintain in full force and effect the insurance referred to in Paragraph 17(b).

(11) Any governmental agency or court of competent jurisdiction finds that the Licensed Articles are defective in any way, manner or form.

(12) Licensee discontinues its business as it is now conducted.

(13) Licensee commits any act or omission reflecting unfavorably, embarrassing or otherwise detracting from the high reputation of any Member University.

(14) Licensee manufactures, distributes or sells Licensed Articles of quality lower than the samples approved, or manufactures, distributes, sells or uses Licensed Articles or Licensed Indicia in a manner not approved or disapproved by CLC, and fails to cure this default within fifteen (15) days from receipt of notice from CLC.

(15) Licensee breaches any provision in this Agreement, and fails to cure this default within fifteen (15) days from receipt of notice from CLC.

(16) Licensee fails to affix to each Licensed Article, its Packaging and Advertising an Official Label and Licensee name in the manner provided in Paragraph 13, and fails to cure this default within fifteen (15) days from receipt of notice from CLC.

(b) CLC shall have the right to terminate this Agreement upon written notice to Licensee at the conclusion of the initial Term or of any renewal period without cause with respect to a particular Member University in the event that said Member University directs CLC to terminate this Agreement. This termination shall be without prejudice to any other rights CLC may have, whether under the provisions of this Agreement, in law, in equity or otherwise.

(c) The entire unpaid balance of all Royalty Payments owing and due under this Agreement shall immediately become due and payable upon termination.

## 20. EFFECT OF EXPIRATION OR TERMINATION / DISPOSAL OF INVENTORY

(a) Effect of Expiration or Termination: After expiration or termination of this Agreement for any reason, Licensee shall refrain from further use of any of the Licensed Indicia or any similar mark, including any geographic reference or depiction, directly or indirectly, or any derivation of the Licensed Indicia or a similar mark, except as provided in Paragraph 20(b), or unless expressly authorized by a Member University. Until payment to CLC of any monies due it, CLC shall have a lien on any units of Licensed Articles not then disposed of by Licensee and on any monies due Licensee from any jobber, wholesaler, distributor, or other third parties with respect to sales of Licensed Articles.

(b) Disposal of Inventory: After expiration or termination of this Agreement, Licensee shall have no further right to manufacture Licensed Articles or other products utilizing the Licensed Indicia, but may continue to distribute its remaining inventory of Licensed Articles in existence at the time of expiration or termination for a period of sixty (60) days, provided all statements (including Final Statement) and

payments then due have been delivered and that during the disposal period Licensee delivers all statements and payments due in accordance with Paragraph 9 and complies with all other terms and conditions of this Agreement. Notwithstanding the foregoing, Licensee shall not manufacture, sell or distribute any Licensed Articles after the expiration or termination of this Agreement because of: (a) departure of Licensee from the quality and style approved by CLC under this Agreement; (b) failure of Licensee to obtain product or design approval; or, (c) a default under Paragraph 19.

## 21. FINAL STATEMENT

Thirty (30) days before the expiration of this Agreement, Licensee shall furnish to CLC a statement showing the number and description of Licensed Articles on hand or in process. If this license is terminated for any reason, such statement shall be furnished within fifteen (15) days after notice of termination. CLC reserves the right to conduct physical inventories to ascertain or verify the amount of remaining inventory.

## 22. SURVIVAL OF RIGHTS

(a) The terms and conditions of this Agreement necessary to protect the rights and interests of the Member Universities in their Licensed Indicia including, but not limited to, Licensee's obligations under Paragraph 17, shall survive the termination or expiration of this Agreement.

(b) The terms and conditions of this Agreement requiring Licensee to furnish CLC with reports, statements, or accounts and payment of monies due to CLC, and providing CLC with the right to examine and make copies of Licensee's books and records to determine or verify the correctness and accuracy of Licensee's reports, statements, accounts or payments shall survive the termination or expiration of this Agreement.

(c) The terms and conditions of this Agreement providing for any activity following the effective date of termination or expiration of this Agreement shall survive until such time as those terms and conditions have been fulfilled or satisfied.

## 23. NOTICES

All notices and statements to be given and all payments to be made, shall be given or made to the parties at their respective addresses set forth herein, unless notification of a change of address is given in writing. Any notice shall be sent by first class mail, or by

mailgram, telex, TWX, telegram, any nationally recognized overnight delivery service or by telecopy, and shall be deemed to have been given at the time it is mailed or sent.

## 24. CONFORMITY TO LAW AND POLICY

(a) Licensee shall comply with such guidelines, policies, and/or requirements as CLC may announce from time to time, including without limitation guidelines, policies and/or requirements contained in periodic CLC bulletins. Licensee shall comply with all laws, regulations and standards relating or pertaining to the manufacture, sale, advertising or use of the Licensed Articles and shall maintain the highest quality and standards. Licensee shall comply with the requirements of any regulatory agencies (including without limitation the United States Consumer Product Safety Commission) which shall have jurisdiction over the Licensed Articles.

(b) Licensee undertakes and agrees to obtain and maintain all required permits and licenses at Licensee's expense.

(c) Licensee shall pay all federal, state and local taxes due on or by reason of the manufacture, distribution or sale of any Licensed Articles.

## 25. SEVERABILITY

The determination that any provision of this Agreement is invalid or unenforceable shall not invalidate this Agreement, and the remainder of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

## 26. NON-ASSIGNABILITY

This Agreement is personal to Licensee, and Licensee shall not sublicense or franchise any of its rights. Neither this Agreement nor any of Licensee's rights shall be sold, transferred or assigned by Licensee without CLC's prior written approval, and no rights shall devolve by operation of law or otherwise upon any assignee, receiver, liquidator, trustee or other party. Subject to the foregoing, this Agreement shall be binding upon any approved assignee or successor of Licensee and shall inure to the benefit of CLC, its successors and assigns.

## 27. NO WAIVER, MODIFICATION, ETC.

This Agreement, including appendices, constitutes the entire agreement and understanding between the parties and cancels, terminates, and supersedes any prior agreement or understanding relating to the subject matter hereof between Licensee, CLC and Member Universities. There are no representations, promises, agreements, warranties, covenants or understandings other than those contained herein. None of the provisions of this Agreement may be waived or modified, except expressly in writing signed by both parties. However, failure of either party to require the performance of any term in this Agreement or the waiver by either party of any breach shall not prevent subsequent enforcement of such term nor be deemed a waiver of any subsequent breach.

## 28. MISCELLANEOUS

When necessary for appropriate meaning, a plural shall be deemed to be the singular and singular shall be deemed to be the plural. The attached appendices are an integral part of this Agreement. Paragraph headings are for convenience only and shall not add to or detract from any of the terms or provisions of this Agreement. This Agreement shall be construed in accordance with the laws of the state of Georgia, which shall be the sole jurisdiction for any disputes. This Agreement shall not be binding on CLC until signed by an officer of CLC.

IN WITNESS WHEREOF, the parties hereto have signed this Agreement.

**LICENSEE  RED RAIDER OUTFITTERS**

By: _____

(Signature of officer, partner, or individual duly authorized to sign)

Title: _____

Date: _____

**THE COLLEGIATE LICENSING COMPANY**

By: _____

(Signature of President or officer duly authorized to sign)

Title: _____

Date: _____

OCT 2 0 1997

APPENDIX A

**Outfitter dba Red Raider Outfitter & Greek Outfitter**

| University Name | City/State | Royalty Rate | Advance Fee |
|---|---|---|---|
| Texas Tech University | Lubbock,TX | 8.0% | N/A |

|  |  | CLC Administrative Fee | 0.00 |
|---|---|---|---|
|  |  | Total Due | 0.00 |



# Appendix C

## Licensed Articles

## Specifications
(materials, content, other
pertinent information)

**2.D FLEECE**
**2.K T-SHIRTS**